## A02A0129. THE STATE v. PICOT.
(565 SE2d 865)

MILLER, Judge.

The State appeals from the trial court's order granting Brigitte Merie Picot's motion to exclude all evidence gathered as the result of an allegedly illegal seizure during a traffic stop. The State contends that the trial court erred by (1) concluding that a Gwinnett County police officer did not have the authority to stop Picot for speeding in Snellville, and (2) ruling that, due to having a suspended license, Picot was in custody at the time of the stop (which would have required a reading of her *Miranda* rights before she could be subjected to field sobriety tests). Since the officer had the authority to arrest Picot after witnessing her speeding (whether in Snellville or Gwinnett County), and since Picot was not in custody prior to undergoing the field sobriety tests, we agree with the State and reverse the trial court's ruling.

At the hearing on defendant's motion, a Gwinnett County officer testified that he saw Picot speeding into the city of Snellville. The

nonresident in *Watts* presented evidence that she did not receive proper service. 133 Ga. App. at 233 (3).

officer followed Picot from unincorporated Gwinnett County into Snellville, pacing her car at 70 mph within the Snellville city limits. The posted speed limit in the area was 45 mph.

The officer turned on his blue lights, and Picot pulled over. When the officer asked Picot for her license, he smelled a strong odor of alcohol on her breath. The officer then checked Picot's license number and her name and discovered that her license had been suspended. However, the officer did not tell Picot about this discovery, nor did he tell her that she was under arrest. Based on the smell of alcohol on Picot's breath, the officer called in another Gwinnett County officer to complete the DUI investigation.

The second officer arrived within minutes, and the first officer informed him that he had stopped Picot for speeding and smelled alcohol on her breath and that her license was suspended. The second officer also noticed the odor of alcohol on Picot's breath and further observed that her eyes were bloodshot, her face was flushed, and her walk was unsteady. When the second officer asked Picot if she would agree to take some field sobriety tests, she consented, and the officer then conducted a series of sobriety tests. Picot did not testify at the motion hearing.

The trial court ruled that the first Gwinnett County police officer did not see Picot speeding in Gwinnett County but only in Snellville and was therefore without authority to stop her within the city limits of Snellville. In addition, the trial court concluded that Picot could have reasonably believed that she was in custody at the time that she was pulled over, because she had a suspended license. The trial court then suppressed all evidence gathered in connection with the stop, and the State now appeals.

1. The State argues that the trial court erred by ruling that the Gwinnett County police officer who stopped Picot for speeding was without authority to do so. We agree with the State.

When the evidence is uncontroverted regarding a motion to suppress and no question of credibility is presented, the trial court's application of the law to the undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Here, the testimony of the Gwinnett County officers is uncontroverted. Since we find that the trial court's application of the law to the undisputed facts was in error, we must reverse the trial court's ruling.

Picot contends that the Georgia Constitution prohibited the Gwinnett County police officer from pulling her over and arresting her in the city limits of Snellville. The relevant provision states that "[*u*]*nless otherwise provided by law* . . . [n]o county may exercise [police] powers . . . inside the boundaries of any municipality or any other county except by contract with the municipality or county

affected. . . ." (Emphasis supplied.) Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a), (b) (1). Interpreting this constitutional provision, "[t]his court has held that two statutes, OCGA §§ 40-13-30 and 17-4-23 (a), . . . authorize [county] police officers to arrest persons for traffic offenses in other jurisdictions. [Cits.]" *State v. Heredia*, 252 Ga. App. 89, 90 (1) (555 SE2d 91) (2001) (Cobb County police officer could pull over defendant in the city limits of Kennesaw for traffic violation committed in Kennesaw); see *State v. Gehris*, 242 Ga. App. 384, 386 (528 SE2d 300) (2000) ("An officer has authority to arrest a person accused of violating any law or ordinance governing the operation of a vehicle where the offense is committed in his presence regardless of territorial limitations.") (punctuation and footnote omitted); see also *Page v. State*, 250 Ga. App. 795, 797 (553 SE2d 176) (2001); *City of Winterville v. Strickland*, 127 Ga. App. 716, 718-719 (2) (194 SE2d 623) (1972).

It is undisputed that the officer who pulled Picot over saw her speeding and paced her at 70 mph in a 45-mph zone. Based on these facts alone, the officer had the authority to arrest Picot regardless of whether he witnessed the speeding in Gwinnett County or in the city of Snellville or whether he pulled her over in Gwinnett County or in the city of Snellville. Since the police officer was authorized to arrest Picot in Snellville, the trial court's ruling to the contrary was in error.

2. The State correctly argues that Picot was never in custody before she was asked to submit to the field sobriety tests, therefore negating any need for the police to read her *Miranda* rights. The police are not required to give *Miranda* warnings prior to administering field sobriety tests during a traffic stop unless the suspect is in custody. *State v. Peters*, 222 Ga. App. 484 (474 SE2d 623) (1996). In deciding whether the suspect was in custody, "the proper inquiry is whether the individual was formally arrested or restrained to [a] degree associated with a formal arrest, not whether the police had probable cause to arrest." (Citations omitted.) *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995).

Here, the officers gave no indication to Picot that she was under arrest prior to administering the field sobriety tests. Even though Picot's license had been suspended, this only gave the officers probable cause to arrest Picot; it did not mean that she was under arrest. The officers never indicated to her that their involvement with her was anything more than a brief investigatory stop. The officers smelled alcohol on Picot's breath and observed other signs that she had been drinking before administering the tests, but had not yet arrested her. Since Picot was not in custody before the officers conducted the field sobriety tests, the officers were not required to give her *Miranda* warnings prior to conducting the tests. The trial court's ruling to the contrary and the resulting suppression of the field sobri-

ety test results were therefore in error. See *Arce v. State*, 245 Ga. App. 466, 467 (538 SE2d 128) (2000) (despite suspect being very intoxicated and not having license or insurance information, officer not required to give *Miranda* warnings prior to conducting field sobriety tests "[a]bsent the officer making a statement or taking an action that would cause a reasonable person to believe that she was under arrest and not temporarily detained for investigation"); *State v. Kirbabas*, 232 Ga. App. 474, 477 (502 SE2d 314) (1998) (police made no statements indicating defendant was under arrest, and "[s]ince there was no arrest during the temporary investigatory stop to conduct the field sobriety tests . . . , then the defendant was not deemed in custody, seized, or 'under arrest' for *Miranda* purposes even if the officer had possession of her driver's license and insurance card and temporarily detained her. [Cits.]").

*Judgment reversed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED MAY 23, 2002 — ■■■■■■■

*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Jeffrey P. Kwiatkowski, Assistant Solicitors-General*, for appellant.
*Chestney-Hawkins Law Firm, Sherry Boston*, for appellee.